**Not for publication in West's Federal Reporter**
**Citation Limited Pursuant to 1st Cir. Loc. R. 32.3**

# United States Court of Appeals
## For the First Circuit

---

No. 02-1740

UNITED STATES OF AMERICA,

Appellee,

v.

CARLOS GUADALUPE-QUINONES,

Defendant, Appellant.

---

APPEAL FROM THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF PUERTO RICO

[Hon. Juan M. Pérez-Giménez, U.S. District Judge]

---

Before

Selya and Lynch, Circuit Judges,
and Young,[*] District Judge.

---

Jason M. Sullivan for appellant.
Thomas F. Klumper, Assistant United States Attorney, with whom H.S. Garcia, United States Attorney, and Sonia I. Torres, Assistant United States Attorney, were on brief, for appellee.

---

May 14, 2003

---

[*]Of the District of Massachusetts, sitting by designation.

**YOUNG, <u>District Judge</u>.**    Defendant-appellant Carlos Guadalupe-Quinones ("Guadalupe-Quinones") appeals the revocation of his supervised release and the imposition upon him of a new sentence of imprisonment.  We affirm.  The affirmance does not preclude Guadalupe-Quinones from pursuing an ineffective assistance claim, if any, under 28 U.S.C. § 2255, nor does it say anything about the merits of such a claim.

## I.    BACKGROUND

On April 10, 1991, a federal grand jury indicted Guadalupe-Quinones on two drug-related counts.  Count One of the indictment charged that on March 30, 1999, Guadalupe-Quinones and a co-defendant, aiding and abetting each other, knowingly and intentionally possessed, with the intent to distribute, approximately forty kilograms of cocaine.  Count Two charged that on March 30, 1999, Guadalupe-Quinones and a co-defendant, aiding and abetting each other, knowingly and intentionally possessed forty kilograms of cocaine while aboard an aircraft (American Airlines Flight 1290, from Puerto Rico to New York).  Guadalupe-Quinones pled not guilty to both counts.  The United States subsequently dismissed Count Two.  Guadalupe-Quinones was ultimately convicted by a jury on Count One.

The district judge initially sentenced Guadalupe-Quinones to 151 months' imprisonment and a five year term of supervised release.  Guadalupe-Quinones subsequently submitted a motion to

vacate the sentence under 28 U.S.C. § 2255. The district judge granted this motion and ordered that Guadalupe-Quinones be produced for re-sentencing. First Assistant Federal Public Defender Epifanio Morales-Cruz ("Morales-Cruz") was assigned to represent Guadalupe-Quinones at the re-sentencing.

On July 8, 1998, the Federal Public Defender, Joseph C. Laws, Jr. ("Laws"), submitted a motion requesting leave to withdraw or for continuance of the sentencing hearing (which was scheduled for July 10). In this motion, Laws explained that Morales-Cruz (who was apparently the second-in-command in the Federal Public Defender's office, supervised only by Laws) had been the prosecutor who handled Guadalupe-Quinones' preliminary hearing. Evidently, Guadalupe-Quinones had called Morales-Cruz on the morning of July 8 to advise him of the conflict of interest, and to request that the Federal Public Defender withdraw from representing him. Laws thus asked the court to permit the Federal Public Defender's office to withdraw, or in the alternative for a continuance, explaining that:

> Morales Cruz advises that he has no recollection of participating in Mr. Guadalupe Quinones' case; nevertheless, any such participation in fact establishes a conflict in relation to this AFPD's continued participation, and possibly conflicts out our appearance by reasons of appearance of impropriety by the remaining AFPDs in the office, who all work with and for Mr. Morales Cruz, who supervises them. It should be noted that AFPD Edgardo Rodriguez Quilichini, who would eventually be tasked to represent Mr. Guadalupe Quinones

-3-

in his appeal, is directly supervised by AFPD Morales Cruz.

The district judge, in a margin order, granted the motion and permitted the Federal Public Defender's office to withdraw. In that same order, he appointed another counsel for Guadalupe-Quinones: Raymond Rivera. The sentencing was rescheduled until August of 1998, at which point the judge sentenced Guadalupe-Quinones to a 121 month term of imprisonment and five years of supervised release.

On March 12, 2002, the United States Probation Office submitted a motion requesting the revocation of Guadalupe-Quinones' supervised release term. In this motion, the probation officer stated that Guadalupe-Quinones had violated his standard conditions of release by committing and being charged with local crimes involving attempt to commit robbery and possession of a blade weapon. Guadalupe-Quinones had pled guilty to these two charges, and had been sentenced by the San Juan Superior Court to four years for the robbery offense and six months for the weapons offense, to be served concurrently.

On March 27, 2002, a magistrate judge issued an order scheduling a show-cause hearing, and appointing the Federal Public Defender to represent Guadalupe-Quinones. On April 8, 2002, a preliminary hearing was held; Guadalupe-Quinones was not present, but an Assistant Federal Public Defender -- Juan Matos -- appeared

as his counsel. On April 10, 2002, the magistrate judge issued a Report and Recommendation, concluding that there were grounds to revoke Guadalupe-Quinones' supervised release, and recommending that the preliminary hearing be combined with the final revocation hearing.

A final hearing was then held on May 13, 2002, before the same district judge who had presided over Guadalupe-Quinones' sentencing in 1998. Guadalupe-Quinones was present and represented by another Assistant Federal Public Defender, Maria Arsuaga. Guadalupe-Quinones was advised of his rights, and was also informed that the probation officer had a copy of the judgment against him for the state offenses. Id. at 5-6. Neither the prosecutor nor Guadalupe-Quinones' counsel -- nor Guadalupe-Quinones himself -- reminded the district judge of the prior conflict with the Federal Public Defender's office nearly four years earlier, and the district judge did not inquire into it. Guadalupe-Quinones waived the hearing, admitted to having committed the state offenses, and was sentenced to 60 months imprisonment to run consecutively with the state court sentence.

Guadalupe-Quinones now appeals this disposition, arguing that his Sixth Amendment right to effective assistance of counsel was violated by his counsel's (alleged) conflict of interest in representing him.

## II.      DISCUSSION

Guadalupe-Quinones argues that, having been advised of his conflict with the Federal Public Defender's office in July 1998, the district judge should have inquired into the nature and extent of that conflict when Guadalupe-Quinones appeared before him -- represented by another member of the Federal Public Defender's office -- during the supervised release revocation proceedings nearly four years later in May 2002.  He argues that as a result of the judge's failure to do so, he received ineffective assistance of counsel, in violation of the Sixth Amendment.  Even assuming, for argument's sake, that the district judge was indeed on inquiry notice -- an assumption that would require us to conclude that a busy trial judge, unprompted, should have recalled a not-particularly-memorable incident that had transpired nearly four years earlier -- this argument fails.

It is true that under Sullivan v. Cuyler, 446 U.S. 335, 347 (1980), and Wood v. Georgia, 450 U.S. 261, 272 (1981), a trial court that knows or reasonably should know that a particular conflict of interest exists on the part of a criminal defendant's counsel -- definitely with respect to counsel's concurrent representation of competing interests, and perhaps with respect to other brands of conflicts as well -- is under the duty to inquire

into the conflict.[1]   Under the Supreme Court's recent holding in Mickens v. Taylor, 535 U.S. 162, 122 S. Ct. 1237 (2002), however, a trial judge's failure to make this mandated inquiry will not, without more, require automatic reversal.   On the contrary, automatic reversal is required "only where defense counsel is forced to represent codefendants over his timely objection, unless the trial court has determined there is no conflict." Mickens, 122 S.Ct. at 1242.   In other circumstances, it is "at least necessary, to void the [disposition], for [the defendant] to establish that the conflict of interest adversely affected his counsel's performance." Id. at 1245.

Despite Guadalupe-Quinones' arguments to the contrary, his claim that a reversal is required merely because the district judge failed to inquire into a conflict about which he knew or should have known is foreclosed by Mickens.   Only by establishing that the alleged conflict of interest adversely affected his counsel's performance can Guadalupe-Quinones prevail in his attempt to set aside the result of this proceeding.   See United States v.

---

[1]Sullivan and Wood both arose within the context of a conflict relating to defense counsel's concurrent representation of competing interests. See Sullivan, 446 U.S. at 337; Wood, 450 U.S. at 266-67.  In Mickens v. Taylor, 535 U.S. 162, 122 S. Ct. 1237, 1245-46 (2002), the Supreme Court noted that "the Federal Rules of Criminal Procedure treat concurrent representation and prior representation differently," and stated that the extent to which there is a duty to inquire with respect to conflicts arising from circumstances other than concurrent representation is "an open question."

Newton, __ F.3d __, 2003 WL 1826135, *9 (1st Cir. 2003) (stating that in Mickens, "the Supreme Court expressly rejected a rule of automatic reversal in cases where a defense attorney's conflict of interest does not adversely affect counsel's performance").

No facts have been developed as to whether there was any adverse effect. The Supreme Court has recently affirmed the wisdom of this circuit's rule that where facts need to be developed on a claim of ineffective assistance of counsel, the claim should be brought by petition for post-conviction relief and the facts should be developed by the trial judge. See Massaro v. United States, No. 01-1559, 2003 WL 1916677 (April 23, 2003).

Accordingly, we affirm the judgment below. Guadalupe-Quinones is not, however, precluded from pursuing an ineffective assistance claim under 28 U.S.C. § 2255, and we do not speak to the merits of any such claim. If Guadalupe-Quinones does pursue such a claim, and demonstrates his indigence, we direct the district court to appoint counsel for him. See 18 U.S.C. § 3006A(a)(2)(B) (stating that if "the interests of justice so require, representation may be provided [under the Criminal Justice Act] for any financially eligible person who . . . is seeking relief under section . . . 2255 of Title 28"); see also United States v. Mala, 7 F.3d 1058, 1063-64 (1st Cir. 1993) (holding that because appellant had presented a colorable claim that was factually complex and legally intricate, and was severely hampered in his

-8-

ability to investigate the undeveloped facts, the interests of justice supported the appointment of counsel if Section 2255 relief was pursued).  As in <u>Mala</u>, we conclude that the interests of justice militate in favor of appointing counsel for appellant should he pursue habeas relief, given the colorability of his claim, its heavily fact-specific nature, and his inability to investigate those facts while in prison.

**III.     CONCLUSION**

Accordingly, we affirm the judgment below, without prejudice to Guadalupe-Quinones' right to raise his ineffective assistance of counsel claim in a proceeding brought under 28 U.S.C. § 2255.  Should he pursue this course, the district court is instructed to appoint counsel for him, subject to the strictures of the Criminal Justice Act.

SO ORDERED.